*Judgment affirmed.*

---

(No. 11147.—Decree modified and affirmed.)
J. B. FERGUS, Appellee, *vs.* JAMES J. BRADY, Auditor of Public Accounts, *et al.* Appellants.

*Opinion filed February 21, 1917.*

1. CONSTITUTIONAL LAW—*revenue, as used in section 18 of article 4 of the constitution, includes not only taxes but all the State's income.* The provision in section 18 of article 4 of the constitution, that appropriations shall not exceed the revenue of the State, means the revenue from all sources and is not limited to moneys raised by direct taxation.

2. SAME—*State Auditor and Treasurer cannot decide upon validity of an appropriation for a governmental purpose.* The duties of the State Auditor and Treasurer in issuing and paying warrants are purely ministerial, and while they may be personally liable for the payment of an appropriation for a purpose outside the functions of State government, they cannot be required to decide upon the validity of a law which is apparently enacted for a governmental purpose and where they have no notice that the appropriation is unlawful.

3. SAME—*section 18 of article 4 of constitution provides for a temporary deficiency due to the uncertainty of the revenue.* Sec-

tion 18 of article 4 of the constitution, prohibiting appropriations in excess of the revenue authorized by law to be raised in the period for which the appropriations are made, provides for a temporary deficiency due to the uncertainty of the revenue by authorizing the State to contract debts up to the amount of $250,000 in case of a casual deficit or failure of revenue.

4. SAME—*section 18 of article 4 of constitution allows State to become indebted by borrowing but not by contract.* Section 18 of article 4 of the constitution allows the State to become indebted to the extent of $250,000 in case of a deficit or failure of revenue; but this debt is only to be created by borrowing money and not by incurring obligations or making contracts, since the section requires that the moneys thus borrowed shall be applied to the purpose for which they were obtained or to pay the debt thus created, and to no other purpose.

5. SAME—*what is express authority of law for the creation of an obligation, as meant by section 19 of article 4 of the constitution.* Under section 19 of article 4 of the constitution every claim or contract is void if not within the amount of appropriations already made, unless there is express authority of law for the creation of the debt or claim or the making of the contract; and that authority is express which confers power to do a particular thing set forth exactly, plainly and directly, with nothing left to implication, as where an officer, board or agency of the State is required to do a specific thing.

6. SAME—*sections 18 and 19 of article 4 of the constitution are unambiguous and leave no room for contemporaneous construction.* Contemporaneous construction is of value only where there is doubt and uncertainty, and the language of sections 18 and 19 of article 4 of the constitution in regard to appropriations is so clear and unambiguous that the practice of the legislature and officers of the government in regard to making appropriations has no influence in determining the legality of such appropriations.

7. SAME—*power of legislature to make additional appropriations.* The power of the legislature to make appropriations for any purpose is not exhausted by one appropriation, but additional appropriations may be made before an indebtedness is incurred, as occasion may require.

APPEAL from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

P. J. LUCEY, Attorney General, LESTER H. STRAWN, and A. R. ROY, (LOGAN HAY, of counsel,) for appellants.

277 — 18

F. S. MUNRO, and JOHN A. WATSON, (STEVENS & HERNDON, of counsel,) for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

By his second amended bill filed in this case in the circuit court of Sangamon county, the appellee, J. B. Fergus, prayed for an injunction against the appellants, James J. Brady, Auditor of Public Accounts, and Andrew Russel, Treasurer of the State of Illinois, to prevent the payment of various sums appropriated by the General Assembly to boards and individuals and to require an accounting and restitution for sums that had been paid out of the State treasury on warrants drawn by the Auditor and paid by the Treasurer. The defendants demurred generally and specially, and the chancellor sustained two of the special causes of demurrer. The bill alleged that appropriations amounting in the aggregate to more than $400,000 were illegal because in excess of the revenue authorized to be raised by taxation. The chancellor held that the word "revenue," as used in section 18 of article 4 of the constitution, is not limited to moneys raised by taxation but includes moneys derived from all sources required by law to be paid into the State treasury within a specified time, and also held that the bill of complaint did not state a case against the defendants warranting an accounting and restitution of moneys paid out of the State treasury. An interlocutory decree was entered accordingly, and the defendants answered, alleging the validity of the appropriations and setting forth the payment of the greater part of them before the suit was instituted. Charles E. Pope, to whom an appropriation had been made, intervened by petition and the cause was heard mainly on a stipulation of facts. The chancellor found that a considerable number of unpaid appropriations were unlawful and enjoined their payment but included by inad-

vertence four claims that had been paid. An appeal was prosecuted from the decree, and appellants have assigned error on the ruling of the chancellor on each of the items held illegal, and the appellee has assigned cross-errors on the ruling of the chancellor in sustaining the special causes of demurrer and the failure to require an accounting and restitution by the defendants of claims paid out before the bill was filed and to decide the same to be illegal.

The decision of the controversy will be better understood by first considering the cross-errors assigned on the ruling of the chancellor sustaining two special causes of demurrer.

The constitution limits appropriations which may lawfully be made by each General Assembly for the ordinary and contingent expenses of the government until the expiration of the first fiscal quarter after the adjournment of the next regular session to the amount of revenue authorized by law to be raised in such time, and the first question is whether the amount of revenue is limited to moneys raised by taxation. There is a very large amount of money paid into the State treasury from other sources than direct taxation, and the ordinary meaning of the word is the total income of the government, derived from all sources, subject to be applied to public purposes. It would not be reasonable to say that appropriations which are not to exceed income should be limited to moneys raised by direct taxation while there are other large sums of money which may be applied to the purposes of the government not taken into account.

The chancellor also held on the special demurrers that the complainant could not compel an accounting and restitution of moneys paid out before the institution of the suit in pursuance of appropriations made by the General Assembly. The duties of the Auditor and Treasurer in issuing and paying warrants are purely ministerial, and neither is required to decide upon the validity of a law which is

apparently enacted for a governmental purpose. A public official having only ministerial duties may be held personally liable for the payment of an appropriation for a purpose which is not governmental in its nature, as in the case of *Jackson* v. *Norris,* 72 Ill. 364, where the treasurer of the city of Salem paid $1000 to the Salem Manufacturing Company to enable that company to discharge its debts, but it would be a perilous doctrine to hold that an official having ministerial duties in the machinery of the State government is authorized to determine whether an act of the General Assembly is in violation of the constitution where he has no notice that the appropriation is unlawful, as in this case. If an appropriation were entirely outside of the functions of a State government the question would be different. The chancellor was right in eliminating from the controversy between the complainant and the State Auditor and Treasurer all the appropriations which had been paid.

The errors assigned by the appellants against the decision of the chancellor concern the unpaid appropriations found to be illegal, and whether they were or not depends upon provisions of the constitution. Sections 18 and 19 of article 4 of the constitution are as follows:

"Sec. 18. Each General Assembly shall provide for all the appropriations necessary for the ordinary and contingent expenses of the government until the expiration of the first fiscal quarter after the adjournment of the next regular session, the aggregate amount of which shall not be increased without a vote of two-thirds of the members elected to each house, nor exceed the amount of revenue authorized by law to be raised in such time; and all appropriations, general or special, requiring money to be paid out of the State treasury, from funds belonging to the State, shall end with such fiscal quarter: *Provided,* the State may, to meet casual deficits or failures in revenues, contract debts, never to exceed in the aggregate $250,000; and moneys thus borrowed shall be applied to the purpose for which they were

obtained, or to pay the debt thus created, and to no other purpose; and no other debt, except for the purpose of repelling invasion, suppressing insurrection, or defending the State in war, (for payment of which the faith of the State shall be pledged,) shall be contracted, unless the law authorizing the same shall, at a general election, have been submitted to the people, and have received a majority of the votes cast for members of the General Assembly at such election. The General Assembly shall provide for the publication of said law for three months at least before the vote of the people shall be taken upon the same; and provision shall be made, at the time, for the payment of the interest annually, as it shall accrue, by a tax levied for the purpose or from other sources of revenue; which law, providing for the payment of such interest by such tax, shall be irrepealable until such debt be paid: *And, provided, further,* that the law levying the tax shall be submitted to the people with the law authorizing the debt to be contracted.

"Sec. 19. The General Assembly shall never grant or authorize extra compensation, fee or allowance to any public officer, agent, servant or contractor, after service has been rendered or a contract made, nor authorize the payment of any claim, or part thereof, hereafter created against the State under any agreement or contract made without express authority of law; and all such unauthorized agreements or contracts shall be null and void: *Provided,* the General Assembly may make appropriations for expenditures incurred in suppressing insurrection or repelling invasion."

Section 208 of division 1 of the Criminal Code makes it a crime for anyone holding any public office, trust or employment to contract, directly or indirectly, for an expenditure beyond the amount appropriated to be contracted for or expended upon the subject matter of the contract, in the following language: "Every person holding any public office, (whether State, county or municipal,) trust or em-

ployment, * * * who shall be guilty of contracting directly or indirectly, for the expenditure of a greater sum or amount of money than may have been, at the time of making the contracts, appropriated or set apart by law or authorized by law to be contracted for or expended upon the subject matter of the contracts, * * * shall be fined not exceeding $10,000, and may be removed from his office, trust or employment."

These provisions of the constitution and statute are clear and unambiguous in terms and their purpose and object can not be misunderstood. Section 18 prohibits appropriations in excess of the revenue authorized by law to be raised in the period for which appropriations are made, but necessarily revenue, whether derived from one source or another in the future, must always be estimated and never can be a fixed and certain sum. Circumstances may occur that will cause the reasonable expectations of the General Assembly as to the amount of revenue to miscarry or not to be fulfilled, so that there may be a temporary deficiency. To meet that condition which may arise from failure in making collections of taxes or result from decreased revenue from other sources, the section provides that in case of failure of revenue the General Assembly may contract debts, never to exceed $250,000. This debt is only to be created by borrowing money,—not by incurring debts or making contracts,—since the section requires that the moneys thus borrowed shall be applied to the purpose for which they were obtained or to pay the debt thus created, and to no other purpose. No other debt can be contracted, except for the purpose of repelling invasion, suppressing insurrection or defending the State in war, except upon a vote of the people at a general election. By section 19 the General Assembly is prohibited from authorizing the payment of any claim, or part thereof, created against the State under any agreement or contract made without express authority of law, and all such unauthorized agreements or contracts

are null and void, with the exception that the General Assembly may make appropriations for expenditures incurred in repelling invasion or suppressing insurrection. By the Criminal Code the making of a contract in excess of the amount of an appropriation subjects the offender to a fine not exceeding $10,000 and removal from his office, trust or employment. No right whatever can grow out of the commission of a crime, and by the plain language of the constitution every claim or contract is utterly void if not within the amount of appropriations already made, unless there is express authority of law for the creation of the debt or claim or the making of the contract. In section 19 claims under any agreement or contract made by express authority of law are excepted, and if there is some particular and specific thing which an officer, board or agency of the State is required to do, the performance of the duty is expressly authorized by law. That authority is express which confers power to do a particular, identical thing set forth and declared exactly, plainly and directly, with well defined limits, and the only exception under which a contract exceeding the amount appropriated for the purpose may be valid is where it is so expressly authorized by law. An express authority is one given in direct terms, definitely and explicitly, and not left to inference or to implication, as distinguished from authority which is general, implied or not directly stated or given. An example of such express authority is found in one of the deficiency appropriations to the Southern Illinois penitentiary which had been paid, and serves only as an illustration. The authorities in control of the penitentiary are required by law to receive, feed, clothe and guard prisoners convicted of crime and placed in their care, involving the expenditure of money, which may vary on account of the cost of clothing, food and labor beyond the control of the authorities, and which could not be accurately estimated in advance for that reason or by determining the exact number of inmates. To

extend the meaning of the constitutional requirement that there shall be express authority of law for the creation of a debt or the making of an agreement or contract in excess of an appropriation for the purpose beyond the meaning we have given to it would destroy and nullify the provisions of the constitution. The power of the General Assembly to make appropriations for any purpose is not exhausted by one appropriation but additional appropriations may be made before an indebtedness is incurred, as occasion may require.

The language of the constitution and intent of the people in adopting it being clear and free from doubt or uncertainty, the practice of the General Assembly and officers of the government in making appropriations has no influence in determining their legality. Contemporaneous construction is of value only where there is doubt and uncertainty, and there is none in this instance. All that has been done is that the General Assembly and public officials have disregarded constitutional requirements adopted by the people for their protection. It cannot be said that the people, who constitute the other party in interest, have acquiesced in the construction adopted by the General Assembly, since the money interest of an individual tax-payer would not justify the necessary expense of an appeal to the courts to prevent such unlawful action.

It would not be practicable to enumerate the appropriations held void by the chancellor and to explain in detail their nature. Each one was for the payment of a claim created without express authority of law and either without a previous appropriation or in excess of the appropriation.

It is argued that the complainant, as a tax-payer, had no right to maintain the bill, but on the principle declared in *Jones* v. *O'Connell,* 266 Ill. 443, and *Fergus* v. *Russel,* 270 id. 304, he had a right to maintain the suit.

The four appropriations which had been paid and were included in the decree by mistake are, $280.15 to A. DeEl-

ton Peterson, $200 to T. E. Wayne, $200 to J. McGreal and $137 to W. P. McGuire. The decree will be modified by striking out these four items and as so modified will be affirmed.

*Decree modified and affirmed.*