(No. 868— )

H. H. Hall Construction Company, Claimant, *vs.* State of Illinois, Respondent.

*Opinion filed November 7, 1929.*

Joseph A. Connell, for claimant.

Oscar E. Carlstrom, Attorney General, S. S. DuHamel, Assistant Attorney General, for respondent.

Mr. Justice Thomas delivered the opinion of the court:

Claimant is a corporation organized under the laws of Illinois and authorized by its charter to construct public highways and to do other construction work and exercise such rights, powers and privileges as are incidental thereto. Pursuant to its bid of November 20, 1921, a contract was thereafter entered into between claimant and the Department of Public Works and Buildings of Illinois whereby claimant agreed to construct sections 1, 3, 4, 5, 6, 7 and 8 of State Bond Issue Route No. 2 and sections 5, 6, 7, 8, 9 and 10 of State Bond Issue Route No. 15, aggregating 67.75 miles. The road was to be surfaced with a concrete pavement 18 feet wide

and was to be constructed according to the proposals, plans and specifications therefor which were made a part of the contract between claimant and the State. The prices for which claimant agreed to do the work aggregated approximately $1,551,000.00, and it was required to and did give a bond for $1,500,000.00 conditioned for the construction of the work according to the terms of the contract. The contract provided the work should be completed during the year 1922, and that claimant should be paid upon estimates made by the engineers as the work progressed. Payments were made from time to time and when the work was finally completed in the latter part of 1923 it was accepted by the State and claimant was paid in full the balance due.

Claimant admits it has been paid the full amount of the price for which it agreed to do the work. But it contends the State was to furnish all cement necessary to the construction of the work and failed to do so as rapidly as it was needed; that such failure prevented claimant from completing the work in 1922 and compelled it to continue the work through the construction season of 1923 thereby causing it to have to pay increased prices for labor, materials and supplies and to maintain its construction and business organization for a longer period than would have been necessary had the cement been furnished at the times it was needed; and that the neglect of the State to furnish cement at the times it was needed caused claimant to lay out and expend, over and above what would have been occasioned if the State had furnished the cement as required, for labor $192,234.40, for stone $5,453.04, for sand $5,093.89, for general expenses and clerks' wages $28,972.08, for leases on camp sites $1,609.00, for additional overhead charges $39,502.96, for depreciation and loss of rentals on use of equipment $155,158.58. For these items aggregating the sum of $428,023.95 claimant has filed its demand for an award against the State.

The contract is not in the record but it is stated by counsel representing both the claimant and the State that the following are its provisions applicable to this case:

"Cement Furnished. When so indicated in the 'Notice to Contractors', cement (not in the sacks) will be furnished the Contractor F. O. B. any steam railroad station in the County by the Department of Public Works and Buildings for the work in hand without charge, under the following conditions:

"As the progress of the work warrants, shipments of cement shall be ordered by the Contractor, upon written authorization by the Department of Public Works and Buildings, from the Cement Company with whom contract has been entered into by said Department for furnishing cement for the particular work in question.

"It is expressly understood by the Contractor that no responsibility is assumed by the Department of Public Works and Buildings for the delivery of the cement at the time desired, and that no extra compensation will be allowed the contractor for delays."

It is manifest from these provisions of the contract that the claimant and the State officials understood that delays might be caused by failure of the cement companies to make prompt deliveries, that the State assumed no responsibility for the delivery of cement, and would pay no extra compensation to claimant on account of such delays. Claimant, having voluntarily signed a contract containing these provisions, is bound by them. Their terms are clear and explicit and effectually bar any claim for an award against the State for damages occasioned by delays of the cement company in the delivery of cement.

Counsel for the State contend that even if the contract did not contain the above provisions claimant would still be barred from recovering an award in this case against the State. We think counsel are right in this contention. Section 19 of Article 4 of the Constitution provides that "the General Assembly shall never grant or authorize extra compensation, fee or allowance to any public officer, agent, servant or contractor, after service has been rendered or a contract made," etc. This provision of the Constitution is mandatory and binding upon the legislature and all courts of the State. (*Pachen Bros.* v. *State,* No. 760, opinion filed Sept. 13, 1927.) Its language is clear and unambiguous and its purpose cannot be misunderstood. (*Fergus* v. *Brady,* 277 Ill. 272.) It was adopted by the people to protect themselves from the mischiefs and evils likely to arise out of claims such as this. (*Dunnegan Construction Company* v. *State,* No. 1021, opinion filed Sept. 10, 1929.) The contract in question fixed the compensation claimant was to receive for doing the work. The work has been completed and the compensation fully paid, and this court has no power to award extra compensation for that work. The claim is therefore denied and the case dismissed.