(No. 3037—

BOARD OF SCHOOL INSPECTORS OF THE CITY OF PEORIA, A CORPORATION, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed November 13, 1941.*

H. D. MORGAN, for claimant.

GEORGE F. BARRETT, Attorney General; GLENN A. TREVOR, Assistant Attorney General, for respondent.

FISHER, J.

Claimant seeks an award of $3,621.12 as the balance due it for the excess cost of educating twenty-six crippled children in School District No. 150, Peoria County, Illinois, for the year 1934-1935.

There is no dispute as to the material facts. The claim is based on expenditures incurred under authority of "An Act to Enable School Districts and Boards of Education to establish and maintain classes and schools for crippled children" approved June 19, 1923, in force July 1, 1923. Section 685f of the said Act (Smith-Hurd Illinois Revised Statutes 1939, Chapter 122, page 3010) reads:

"The aggregate excess cost of maintenance of such classes and schools as determined, computed, and reported by the board of education, board of school inspectors or school directors, as provided in section 5 of this Act, shall be and the same is hereby made a charge against the State of Illinois and such excess cost shall be paid annually to such board of education, board of school inspectors or school directors on the warrant of the Auditor of Public Accounts out of any money in the treasury appropriated for such purposes, on presentation of proper vouchers approved by the Director of Public Welfare; *Provided, however*, that such excess cost for each pupil shall not exceed the following amount:

For crippled children........................$300.00 a pupil per annum.

In case the money appropriated by the General Assembly for the purposes set out in this section prove insufficient, such money shall be apportioned to each school district on the basis of the claims filed for the excess cost and each district shall thereupon receive a proportional part of said appropriated funds."

The claimant filed its voucher in proper form with the Department of Public Welfare of the State of Illinois showing the sum of $4,442.55 due it for expenditures made under the provisions of the above Act. This voucher was approved by A. L. Bowen, Director of Public Welfare of the State of Illinois, as correct, and he, in his letter to claimant approving said voucher, stated:

"The fifty-ninth General Assembly which adjourned recently, passed a bill providing that the appropriation for crippled children, should be pro-rated among the various school districts which filed claims, and the Attorney General has rendered an opinion to the effect that the funds for the school year ending June 30, 1935, should be apportioned on a pro-rata basis to the school districts which presented claims to this Department for approval.

As only $100,000 are available for the payment of these claims for the last school year and the claims will amount to more than $500,000, the payment made by the State on your claim will approximate from fifteen to twenty per cent of the amount due."

Subsequently, A. L. Bowen, Director of the Department of Public Welfare pro-rated all claims, finding the factor to be 18.49%, and all vouchers of all school districts were handled on that basis. Claimant received $821.43, which was 18.49% of its claim of $4,442.55, leaving an unpaid balance of $3,621.12, being the amount of this claim.

Claimant relies for approval of its claim on the wording of Section 685f of the Statute above referred to and the case of *Fergus* vs. *Brady*, 277 Ill. 272.

In considering the merits of this claim, it is necessary to take into consideration the intent and meaning of sections 18 and 19 of article 4 of the Constitution and the provisions of the Legislative Act in question.

With respect to said sections 18 and 19, the Supreme Court in *Fergus* vs. *Brady*, 277 Ill. 272, page 278, said:

"These provisions of the constitution and statute are clear and unambiguous in terms and their purposes and object cannot be misunderstood. Section 18 prohibits its appropriations in excess of the revenue authorized by law to be raised in the period for which appropriations are made, but necessarily revenue, whether derived from one source or another in the future, must always be estimated and never can be a fixed and certain sum. Circumstances may occur that will cause the reasonable expectations of the General Assembly as to the amount of revenue to miscarry or not to be fulfilled, so that there may be a temporary deficiency. To meet that condition which may arise from failure in making collections of taxes or result from decreased revenue from other sources, the section provides that in case of failure of revenue the General Assembly may contract debts, never to exceed $250,000. This debt is only to be created by borrowing money—not by incurring debts or making contracts—since the section requires that the moneys thus borrowed shall be applied for the purpose for which they were obtained or to pay the debt thus created, and to no other purpose. No other debt can be contracted, except for the purpose of repelling invasion, suppressing insurrection of defending the State in war, except upon a vote of the people at a general election. By section 19 the General Assembly is prohibited from authorizing the payment of any claim, or part thereof, created against the State under any agreement or contract made without express authority of law, and all such unauthorized agreements or contracts are null and void, with the exception that the General Assembly may make appropriations for expenditures incurred in repelling invasion or suppressing insurrection."

In this same case, the Supreme Court on page 279, and which is the particular part of this case relied upon by the claimant, said:

"In section 19, claims under an agreement or contract made by express authority of law are excepted, and if there is some particular and specific thing which an officer, board or agency of the State is required to do, the performance of the duty is expressly authorized by law. That authority is express which confers power to do a particular, identical thing set forth and declared exactly, plainly and directly, with well defined limits, and the only exception under which a contract exceeding the amount appropriated for the purpose may be valid is where it is so expressly authorized by law. An express authority is one given in direct terms, definitely and explicitly, and not left to inference or to implication, as distinguished from authority which is general, implied or not directly stated or given. An example of such express authority is found in one of the deficiency appropriations to the

Southern Illinois penitentiary which had been paid, and serves only as an illustration. The authorities in control of the penitentiary are required by law to receive, feed, clothe and guard prisoners convicted of crime and placed in their care, involving the expenditure of money, which may vary on account of the cost of clothing, food and labor beyond the control of the authorities, and which could not be accurately estimated in advance for that reason or by determining the exact number of inmates."

Claimant contends that the education of crippled children was a duty it was required to do, expressly authorized by law because of the Statute in question. School districts and other school governing bodies have only such powers and authority as is given to them by Statute, and to remove any question of authority on their part to set up classes and make provision for the education of crippled children, the Statute was enacted. The Statute, however, did not make it compulsory or mandatory on any of the school districts in the State to provide this service. Section 685a of the Statute in question, reads:

"* * * School districts may establish and maintain classes of one or more pupils and schools for the instruction of crippled children who are residents of such a district."

The word "may" is used, and, in fact, many of the school districts in the State did not establish such schools. The Legislature may have thought it desirable to establish such schools, but did not make it compulsory to do so. As stated in *Fergus* vs. *Brady,* supra:

"The authorities in charge of Southern Illinois penitentiary had a duty imposed by law to take care of all prisoners sent to their institution."

In their case it was compulsory, which is not true of the case at bar.

Because of the constitutional provisions all school districts establishing such schools were limited in the aggregate to the sum appropriated of $100,000 from State funds. The Legislature might have thought that this was a sufficient sum to pay for the excess cost of educating crippled children for the year in question, but the amount necessarily had to be estimated. In fact, subsequent sessions of the Legislature have greatly increased the amount of this appropriation and the State is defraying all or a substantial amount of the expense for this additional educational facility.

The Director of the Department of Public Welfare finding that the sum of $100,000 was not sufficient, pro-rated all claims, which was the reasonable and fair thing to do. The

Legislature added an amendment to section 685f which was approved July 5, 1935, as follows:

"In case the money appropriated by the General Assembly for the purposes set out in this section prove insufficient, such money shall be apportioned to each school district on the basis of the claims filed for the excess cost and each district shall thereupon receive a proportional amount of said appropriated funds."

This amendment became law subsequent to the time the claim in question was incurred, but we cite it to show that the Legislature recognized the necessity of pro-rating and thereby enacted into law and removed beyond question what we are of the opinion the Director of the Department of Public Welfare had the implied authority to do before the enactment of the said amendment.

However equitable may be the demands of the claimant in this case, the fact remains that the appropriation was limited to $100,000; it was exhausted; and claimant received its just pro-rata share with other school districts. To allow an award in this case would be contrary to the constitutional provisions herein cited.

Award is denied.