(No. 79-CC-0651, 79-CC-0652, 79-CC-0653—

KANKAKEE COUNTY SHERIFF'S POLICE DEPARTMENT, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed July 9, 1979.*

L. PATRICK POWER, for Claimant.

WILLIAM J. SCOTT, Attorney General (WILLIAM E. WEBBER, Assistant Attorney General, of counsel), for Respondent.

HOLDERMAN, J.

Claimant filed three complaints based on the grounds that funds appropriated have lapsed. The State has moved to dismiss these cases, (though the cases are not consolidated).

The facts behind these cases are that the County of Kankakee authorized expenditures by certain of its dep-

uty sheriffs for travel to other jurisdictions for the purpose of returning fugitives for prosecution in Kankakee County. Money was appropriated for this type of expenditure as reimbursement for the County by the Legislature.

The State claims in its motion that when the claims were presented to the Department for payment, the Department had insufficient funds ($32.07) remaining in their appropriation with which to pay the claims.

The State's argument, which we think is sound is as follows:

Although the Constitution of 1870 has now been superceded, and the moneys for which the Claimant here seeks recovery were incurred following the effective date of the Constitution of 1970, the comments in the various opinions relating to article IV, section 19 of the Constitution of 1870 are still pertinent in view of the essential similarity with Ill. Rev. Stat., ch. 127, par. 166 which is still in full force and effect. Both forbid spending or binding of the State to debts in excess of money appropriated, unless expressly authorized by law.

"The General Assembly shall never grant or authorize extra compensation, fee or allowance to any public officer, agent, servant or contractor, after service has been rendered or a contract made, or authorize the payment of any claim, or part thereof, hereafter created against the State under any agreement or contract made without express authority of law; and all such unauthorized agreements or contracts shall be null and void; *provided*, the General Assembly may make appropriations for expenditures incurred in suppressing insurrection or repelling invasion." (Article IV, section 19, Constitution of Illinois 1870)

"No officer, institution, department, board or commission shall contract any indebtedness on behalf of the State, nor assume to bind the State in an amount in excess of the money appropriated, unless expressly authorized by law." Ill. Rev. Stat., ch. 127, par. 166.

The essential similarity of these two provisions is the use of the term "express authority of law" used in the Constitution of 1870 and the term "expressly authorized

by law" as used in the statute. These terms raise the issue as to what type of an expenditure is expressly authorized by law.

The leading cases would appear to be *Fergus v. Brady* 177 Ill. 272, *Board of School Inspectors of the City of Peoria, a corporation v. State of Illinois* 12 Ill. Ct. Cl. 17.

For purposes of this discussion it is not necessary to elaborate on the background of *Fergus (supra)* decision, but it would be pertinent to quote from that decision beginning on page 279:

"In Sec. 19, claims under an agreement or contract made by express authority of law are excepted, and if there is some particular and specific thing which an officer, board or agency of the state is required to do, the performance of the duty is expressly authorized by law. That authority is express which confers power to do a particular, identical thing set forth and declared exactly, plainly and directly, with well defined limits, and the only exception under which a contract exceeding the amount appropriated for the purpose may be valid is where it is so expressly authorized by law. An express authority is one given in direct terms, definitely and explicitly, and not left to inference or to implication, as distinguished from authority which is general, implied or not directly stated or given. An example of such express authority is found in one of the deficiency appropriations to the Southern Illinois Penitentiary which had been paid, and serves only as an illustration. The authorities in control of the penitentiary are required by law to receive, feed, clothe and guard prisoners convicted of crimes and placed in their care, involving the expenditure of money which may vary on account of the cost of clothing, food and labor beyond the control of the authorities, and which could not be accurately estimated in advance for that reason or by determining the exact number of inmates."

*The Board of School Inspectors (supra)* case involved a suit by the City of Peoria for reimbursement of expenses incurred in the education of crippled children. The education of these children was apparently induced by the passage of a statute by the Illinois Legislature which provided for reimbursement of the expenses incurred by school districts or others in the education of these children. The Legislature in passing the statute provided for $100,000.00 to defray this expense. The response was so overwhelming that the expenses of the

various school districts far exceeded the $100,000.00. The director of the Department of Public Welfare, who was charged with the responsibility of the administration of this program, prorated the claims and authorized the payment to each Claimant on a prorated basis. The claim of the city of Peoria was for the excess over and above their prorated share. The Court of Claims in that case held that the proration was an equitable approach and that the city of Peoria had no claim to any further reimbursement as the expenditure was one not expressly authorized by law in accordance with definitions set forth in *Fergus v. Brady, (supra).* The Court distinguished *Fergus v. Brady (supra)* from *Board of School Inspectors, (supra)* by pointing out that in the illustration set forth in *Fergus v. Brady, (supra)* the authorities in charge of Southern Illinois Penitentiary had a duty imposed by law to take care of all prisoners sent to their institutions whereas in the *Board of School Inspectors, (supra),* it was not compulsory that the counties provide the education for these crippled children. The Court points out that as a matter of fact many school districts throughout the State did not choose to participate. The claim of the *Board of School Inspectors of the City of Peoria* was therefore denied.

This Court has in the past gone both ways on the question now before this Court. In the case of *Orville St. P. Clavey v. State of Illinois,* 73—CC—17 this Court in a rather perfunctory opinion, in a case handled by Assistant Attorney General Saul Wexler, granted a recovery. However, in two cases absolutely identical with the ones currently before the Court, *City of Kankakee v. State,* 73—CC—191 and *City of Kankakee v. State,* 73—CC—19, this Court, based on the identical arguments expressed in this memorandum granted Respondent's motion to dismiss. In the cases involving the City

of Kankakee, the claims were for the reimbursement to the City of funds which they had in turn reimbursed to certain detectives on the Kankakee police force for their expenses in having traveled out of state for the purpose of bringing back to Kankakee for trial certain extradited prisoners.

It is inherent in the administration of State government that expenditures should not exceed appropriations previously made with the possible exception set forth in the case of *Fergus v. Brady, (supra)* where the expenditure is strictly prescribed and the spending agency is compelled by circumstances and law to obligate the State.

Without strict and well enforced guidelines, the spending of State officials could become rampant.

The drafters of the Constitution of 1970 were fully cognizant of this situation when they drafted article VIII, section 1. They provided two requisites for spending of public funds; it must be for a "public purpose" and it must be "only as authorized by law":

"Section 1. General Provisions

(a) Public funds, property or credit shall be used only for public purposes.

(b) The State, units of local government and school districts shall incur obligations for payment or make payments from public funds only as authorized by law or ordinance."

We find here a similarity of the concepts that obligations must be made only with "express authority of law" (Constitution of 1870) or "only as authorized by law" (Constitution of 1970).

The basic concept of the obligation of having to be authorized by law remains. What is the significance of the fact that the drafters failed to utilize the word "express" or "expressly" in conjunction with the phrase "only as authorized by law."

Did this indicate an intent that the restrictions on obligating or spending public funds be less stringent; was this simply an attempt to delegate a wider latitude of discretion to the General Assembly; or was it neither, but simply an example of the elimination of superfluous verbiage,

The determination of this question seems academic in view of the fact that the law on the books today remains as it was in Ill. Rev. Stat. 1967-1968, ch. 127, par. 166, and retains the "restrictive" phrase "expressly authorized by law".

The question then is, were the expenditures in question here expenditures absolutely (expressly) required by law. This Court is of the opinion that the decision to incur the expense for which claim is here made is discretionary and is not analogous to the situation where the prison officials had no choice but to feed, clothe and house the prisoners assigned to their care. It would therefore follow that the claims should be denied.

Motion to dismiss is allowed.