(No. 76-CC-2336—)

CITY OF CARBONDALE, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Order filed November 29, 1979.*

HOLDERMAN, J.

Claimant filed a claim against the State of Illinois in the amount of $18,138.04, representing the amount of money expended by the city of Carbondale as a result of a grant to the State by the Federal Government under EEA Title V, which money was to be administered by Respondent.

The city asserts that it entered into a contract with the State of Illinois Department of Personnel providing

for the employment by the city of Carbondale of certain persons who had been unemployed for a specified period of time. The State, according to Claimant, agreed to pay certain sums for the salaries of those persons employed by the city meeting the eligibility requirements under the EEA program. Claimant alleges that pursuant to the agreement, Claimant hired employees, paid them, and requested reimbursement from the State of Illinois for wages and fringe benefits paid to said employees pursuant to the program and the agreement between Claimant and the State of Illinois. Some reimbursement was made by the State of Illinois but, due to accounting errors alleged to be the responsibility of the State of Illinois, the Federal money was "overexpended" and a deficiency resulted, causing a loss to the city of Carbondale in the amount of $18,138.04.

Claimant alleges that there was an oral agreement entered into between the city of Carbondale and Respondent regarding the hiring of the employees and payment of the same.

The director of the Public Employment Program left his position, but prior thereto he had prepared a phaseout schedule for all the local governments as to the amount of money that was still left in the Federal fund and how much each local government was to receive.

Claimant takes the position that this is in the nature of a simple lapsed appropriation case. Respondent disputes this and argues that the reasons why the Federal money was exhausted prior to payment of the city of Carbondale claim is immaterial. Respondent further takes the position that until such time as there is a State appropriation of money supplementing the exhausted Federal funds, there can be no relief.

It is well to note in the beginning that at no time was

there any money appropriated by the legislature of the State of Illinois from which this claim could have been paid. It can very well be argued that since there was no appropriation made by the State, there certainly cannot be a lapsed appropriation.

Respondent takes the position that the State was merely a caretaker on behalf of the Federal Government and there was never any liability on the part of the State because no appropriation was made by the legislature appropriating money for this particular purpose.

Respondent alludes to the case of *The Board of School Inspectors of the City of Peoria, a Corporation, v. State of Illinois* (1941), 12 Ill. Ct. Cl. 17 in support of respondent's position. In the Peoria case, the school district vouchered the costs of certain educational programs for crippled children against a State Act which provided $100,000.00 to various school districts claiming such costs for the year in question. The voucher was approved but only 20 percent of the claim could be paid because the costs of the program were greater than the legislature had anticipated and the claims had to be pro-rated.

The Court cited *Fergus v. Brady*, 227 Ill. 272, 278, where the Illinois Supreme Court had pointed out that the Illinois Constitution prohibited appropriations in excess of the revenue authorized by the legislature for the period for which appropriations were made. It was also pointed out that the general assembly is prohibited from permitting any agreement or contract made without express authority of law and that all such agreements or contracts are null and void. The Court, in the *Peoria* case, concluded that since the education of crippled children was not a mandatory duty imposed on the various school districts and was elective on the part of

the school districts and because of the Constitutional provisions, all school districts were limited in the aggregate to the sum of $100,000.00 from State funds. The Court in the *Peoria* case concluded that although the claim of the Peoria School District may be equitable, the appropriations were limited to $100,000.00, and the appropriations were exhausted.

Respondent also takes the position that it is the law of the State of Illinois that whoever deals with a municipality does so at his peril and must take cognizance of the limitation of the municipality or its agents powers. 22 Ill. Ct. Cl. 592. This case also held that the Court of Claims cannot disregard the Constitution and laws of the State of Illinois nor restrict or extend the power of the legislature to pay claims against the State.

It is unfortunate in the present case that Claimant in good faith relied upon the Respondent, without first checking to see whether Respondent or its agent had the power or authority to enter into said alleged oral contract.

In the *Peoria* case, this Court refused to allow itself to be used as an alternate to the legislative process of deficiency appropriating. The argument in the case now before the Court is even stronger inasmuch as the Court in the *Peoria* case was dealing with an appropriation of State funds whereas in the present case the money involved was Federal and the State of Illinois was merely administering the disbursement of the funds.

Claimant contends that it had a right to summary judgment for failure of the State of Illinois to respond to subpoenas, produce documents, and in general to comply with the requirements of the Civil Practice Act regarding the right of Claimant to discovery. It does appear from the record that Respondent was substantial-

134

ly neglectful of its responsibilities to comply with discovery orders of this Court and neglectful in its advice to certain witnesses that they did not need to appear pursuant to subpoenas lawfully issued out at the request of Claimant for various State employees in connection with this claim. The State is reminded by this Court that it has the duty to comply with the provisions of the Civil Practice Act and the orders of this Court regarding discovery practice the same as any other practicing attorney and it strongly suggests that in the future the rules of the Civil Practice Act, together with the rules of this Court, be observed and followed.

Claimant's motion to reconsider the order heretofore entered is denied and this cause is dismissed.