(No. 78-CC-0895-)

CLIFTON F. HALL, M.D., Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed December 27, 1979.*

CLIFTON F. HALL, *pro se*, for Claimant.

WILLIAM SCOTT, Attorney General (WILLIAM E. WEBBER, Assistant Attorney General, of counsel), for Respondent.

POCH, J.

This claim is made by Dr. Clifton Hall for $314.00 for charges for medical services rendered to the residents of the Stateville Correctional Center in June of 1977. The

1

departmental report received by the office of the Attorney General and their investigation of this matter indicates that the appropriation out of which this normally would have been paid would have been contractual services fund No. 001-42682-1200-00-00 appropriated for fiscal year 1977. The report also indicated that there was $1,332.51 returned to the State treasury from the contractual services appropriation at the close of the fiscal period, all of which amount was committed. There was, therefore, no uncommitted funds remaining at the time of the lapse of the appropriation. The department also reports that there was a grand total of $2,357.00 in claims against this appropriation which included the claim of Dr. Hall.

As can be seen from the above, this case involves a situation where the contractual services line item for Stateville Correctional Center was exhausted in that, even though there was a small balance returned to the treasury upon the lapse of the fiscal period, there were more claims against the line item than there was money lapsed.

The question presented to this Court, therefore, is, can this obligation of Dr. Hall be paid and if so how?

Section 30 of the State Finance Act (Ill. Rev. Stat. 1977, ch. 127, par. 166) provides as follows:

"§30. No officer, institution, department, board or commission shall contract any indebtedness on behalf of the State, nor assume to bind the State in an amount in excess of the money appropriated, unless expressly authorized by law."

This paragraph raises two questions. First, does "appropriated" refer to the total appropriation to the agency from a particular fund or does it refer to individual line item appropriations. Secondly, it raises the question as to what is meant by the phrase "expressly authorized by law"?

As to the first question, section 13.2 of the State Finance Act (Ill. Rev. Stat. 1977, ch. 127, par. 149.2) provides in part as follows:

"Transfers among line item appropriations from the same treasury fund for the objects specified in this Section may be made in the manner provided in this Section when the balance remaining in one or more such line item appropriations is insufficient for the purpose for which the appropriation was made . . . . such transfers for an agency in a fiscal year shall not exceed 2% of the aggregate amount appropriated to it within the same treasury fund. . . "

From the above it appears obvious to this Court that the legislature, in section 30, was referring to appropriation or "appropriated" in its broader term. To restrict the term to mean line item appropriation would be contrary to accepted principles of statutory construction inasmuch as it would result in section 30 being repugnant to section 13.2 and vice versa. (Ill. Rev. Stat. 1977, ch. 127, pars. 166, 149.2.) Where possible we must construe the statutes harmoniously with one another; therefore, we hold that the legislature intended the broader view. Pursuant to section 13.2 the agency could transfer an amount equivalent to 2% of the aggregate amount appropriated to it from the general fund for all of its various institutions and was not restricted to the line items for Statesville. However, the departmental report, in response to the Attorney General's questions, establishes that within fund No. 001-42682 there were four line items in the Stateville budget alone from which there would have been available for transfers the following amounts:

| | |
|---|---|
| Line Item 1300-00-00 for commodities | $819.28 |
| Line Item 1302-00-00 for printing | $1,671.29 |
| Line Item 1700-00-00 for telecommunications | $115.00 |
| Line Item 1800-00-00 for operation of auto equipment | $882.22 |

These amounts total $3,487.79 which was available for transfer to the contractual services line item.

Inasmuch as there was more money available for transfer from these four sources alone than the total amount of the claims against the contractual services line

item it is this Court's finding that there were sufficient funds appropriated to the Department of Corrections for the payment of the obligation claimed.

Although the Constitution of 1870 has now been superseded, and the instant claim arose subsequent to the effective date of the Constitution of 1970, the decisions interpreting article IV, section 19 of the Constitution of 1870 are still pertinent, in view of the essential similarity of that provision with section 30 of the State Finance Act (Ill. Rev. Stat. 1977, ch. 127, par. 166), which is still in full force and effect. Both forbid the State to incur debts in excess of money appropriated, unless expressly authorized by law.

"The General Assembly shall never grant or authorize extra compensation, fee or allowance to any public officer, agent, servant or contractor, after service has been rendered or a contract made, or authorize the payment of any claim, or part thereof, hereafter created against the State under any agreement or contract made without express authority of law; and all such unauthorized agreements or contracts shall be null and void; provided, the General Assembly may make appropriations for expenditures incurred in suppressing insurrection or repelling invasion." (Ill. Const. 1870, art. IV, sec. 19.)

"No officer, institution, department, board, or commission shall contract any indebtedness on behalf of the State, nor assume to bind the State in an amount in excess of the money appropriated, unless expressly authorized by law." (Ill. Rev. Stat., ch. 127, par. 166.)

The essential similarity of these two provisions is the use of the term "express authority of law" used in the Constitution of 1870 and the term "expressly authorized by law" as used in the statute. These terms raise the issue as to what type of an expenditure is expressly authorized by law.

The leading cases would appear to be *Fergus v. Brady*, 277 Ill. 272; *Board of School Inspectors of the City of Peoria v. State of Illinois*, 12 Ill. Ct. Cl. 17; and *Schutte and Koerting Company v. State of Illinois*, 22 Ill. Ct. Cl. 591.

For purposes of this discussion it is not necessary to elaborate on the background of the *Fergus (supra)* decision, but it would be pertinent to quote from that decision.

"In section 19, claims under an agreement or contract made by express authority of law are excepted, and if there is some particular and specific thing which an officer, board or agency of the State is required to do, the performance of the duty is expressly authorized by law. That authority is express which confers power to do a particular, identical thing set forth and declared exactly, plainly and directly, with well defined limits, and the only exception under which a contract exceeding the amount appropriated for the purpose may be valid is where it is so expressly authorized by law. An express authority is one given in direct terms, definitely and explicitly, and not left to inference or to implication, as distinguished from authority which is general, implied or not directly stated or given. An example of such express authority is found in one of the deficiency appropriations to the Southern Illinois Penitentiary which had been paid, and serves only as an illustration. The authorities in control of the penitentiary are required by law to receive, feed, clothe and guard prisoners convicted of crime and placed in their care, involving the expenditure of money which may vary on account of the cost of clothing, food and labor beyond the control of the authorities and which could not be accurately estimated in advance for that reason or by determining the exact number of inmates." *Fergus v. Brady* (1917), 277 Ill. 272, 279.

The *Board of School Inspectors (supra)* case involved a suit by the city of Peoria for reimbursement of expenses incurred in the education of crippled children. The education of these children was apparently induced by the passage of a statute by the Illinois legislature which provided for reimbursement of the expenses incurred by school districts or others in the education of these children. The legislature in passing the statute provided for $100,000.00 to defray this expense. The response was so overwhelming that the expenses of the various school districts far exceeded the $100,000.00. The director of the Department of Public Welfare who was charged with the responsibility for the administration of this program prorated the claims and authorized the payment to each claimant on a prorated basis. The claim of the city of Peoria was for the excess over and above their prorated share. The Court of Claims in that case

held that the proration was an equitable approach and that the city of Peoria had no claim to any further reimbursement as the expenditure was one not expressly authorized by law in accordance with definitions set forth in *Fergus v. Brady* (*supra*). The Court distinguished *Fergus v. Brady* (*supra*) from *Board of School Inspectors* (*supra*) by pointing out that in the illustration set forth in *Fergus v. Brady* (*supra*) the authorities in charge of Southern Illinois Penitentiary had a duty imposed by law to take care of all prisoners sent to their institutions whereas in *Board of School Inspectors* (*supra*), it was not compulsory that the counties provide the education for these crippled children. The Court points out that as a matter of fact many school districts throughout the State did not choose to participate. The claim of the board of school inspectors of the city of Peoria was therefore denied.

In *Schutte and Koerting Co. v. State of Illinois* (*supra*), we have a case where the legislature set up the Illinois Coal Products Commission, a temporary non-departmental legislative commission for purposes of constructing and maintaining an experimental pilot plant to develop techniques for the profitable utilization of the low grade coal found in Illinois. The Commission was originally created in 1943, at which time a total of $35,000.00 was appropriated. In each of the years 1945, '47, '49 and '51, the Commission was recreated by an identical act of the General Assembly, and in each act a certain specified sum was appropriated for the identical purposes expressed in the 1943 act. *Schutte v. State* (*supra*) was filed as a result of the fact that contracts were entered into between the Coal Products Commission and certain suppliers with said contracts being in excess of the $100,000.00 appropriated for the '49 through '51 biennium.

In *Schutte v. State* (*supra*) the Court states beginning on page 603—

"With respect to this question, it is fundamental that all governmental agencies, departments and commissions are strictly circumscribed in their powers and authorities by the constitution and statutes of the State of Illinois.

Chap. 127, §166 of the Illinois Revised Statutes, (1955 State Bar Association edition), provides as follows: '§166 Indebtedness exceeding appropriation prohibited. No officers, institution, department, board or commission shall contract any indebtedness on behalf of the State, nor assume to bind the State in an amount in excess of the money appropriated, unless expressly authorized by law. 1919, June 10, Laws 1919 pg. 946, §30.'"

This Court then follows by quoting from *Fergus v. Brady* (1917), 277 Ill. 272, 279-80, wherein they once again discuss what is meant by express authority of law and cite the example given with reference to Southern Illinois Penitentiary.

However, in *Schutte v. State* (*supra*) rather than to deny all claims outright, this Court took one step beyond their holding in *Board of School Inspectors of the City of Peoria* v. *State* (*supra*) and held that where sufficient funds were available at the time the contract was entered into, the Court would honor the contract even though the contract was not paid before the funds available were totally expended.

The court went on in the *Schutte* case to hold that any contract entered into, after the appropriation had become totally obligated, would be denied.

It is important in applying the principle set out in *Schutte* (*supra*) to distinguish between the balance of the appropriation left unobligated and the balance of the appropriation actually remaining on hand. To allow a claim, simply because the amount actually being held on the date the obligation is incurred equals or exceeds the obligation, could lead to overspending by the agency and deficiency appropriating by this Court.

This approach also could not guarantee that invoice vouchers prepared after the funds are fully obligated would not be processed and paid leaving no funds for obligations incurred at an earlier date. For this reason we repudiate that portion of *Schutte and Koerting Co. v. State of Illinois*, 22 Ill. Ct. Cl. 591, which allows awards simply because the line item appropriation was not shown on the books of the agency as being fully obligated on the date the "debt" was incurred. The legislature, in the wise and thoughtful exercise of its prerogatives, has made such awards unnecessary. Section 13.2 of the State Finance Act (Ill. Rev. Stat. 1977, ch. 127, par. 149.2) should adequately protect vendors without this Court resorting to anything but a strict and conscientious adherence to the statutes relating to this problem.

It is inherent in the administration of State government that expenditures should not exceed appropriations previously made with the possible exception set forth in the case of *Fergus v. Brady* (*supra*) where the expenditure is strictly prescribed by the legislature and the spending agency is compelled by circumstances and law to obligate the State. This appears to be a permissible (and expeditious) delegation of authority by the legislature.

Without strict and well enforced guidelines, the spending of State officials could become rampant.

The drafters of the Constitution of 1970 were fully cognizant of this situation when they drafted article VIII, section 1. They provided two requisites for spending of public funds:

It must be for a "public purpose" and it must be "only as authorised by law":

"Section 1. General Provisions

(a) Public funds, property or credit shall be used only for public purposes.

(b) The State, units of local government and school districts shall incur obligations for payment or make payments from public funds only as authorized by law or ordinance."

We find here a similarity of the concepts that obligations must be made only with "express authority of law" (Constitution of 1870) or "only as authorized by law" (Constitution of 1970).

The basic concept of the obligation having to be authorized by law remains, but the question is raised as to the significance, if any, of the fact that the drafters failed to utilize the word "express" or "expressly" in conjunction with the phrase "only as authorized by law."

Did this indicate an intent that the restrictions on obligating or spending public funds be less stringent, or was this simply an attempt to delegate a wider latitude of discretion to the General Assembly or was it neither, but simply an example of the elimination of superfluous verbiage.

The determination of this question seems academic in view of the fact that the law on the books today remains as it was in 1967 and 1968—section 30 of the State Finance Act (Ill. Rev. Stat. 1977, ch. 127, par. 166)— and retains the "restrictive" phrase "expressly authorized by law."

The question then is, was the expenditure in question here—namely the providing of medical attention to an inmate—an expenditure absolutely (expressly) required by law. This Court thinks that, in line with the example set out by the Illinois Supreme Court in *Fergus v. Brady* (*supra*) it would be. However, in view of our earlier conclusion that pursuant to section 13.2 of the State

Finance Act (Ill. Rev. Stat. 1977, ch. 127, par. 149.2) there were adequate funds appropriated and that this obligation could be paid from those funds, it is unnecessary for us to decide this case on any other grounds.

It is therefore ordered that Dr. Clifton Hall be awarded the sum of $314.00 (three hundred fourteen and no/100 dollars).