HOLDERMAN, J.

(No. 6891)

ILLINOIS EDUCATION ASSOCIATION, ET AL., An Illinois Not-For-Profit Corporation, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed June 25, 1973.*

LAWRENCE JAY WEINER, Attorney for Claimant.

WILLIAM J. SCOTT, Attorney General; SAUL R. WEXLER, Assistant Attorney General, for Respondent.

Burks, J.

This case was filed September 12, 1972, by the Illinois Education Association, an Illinois Not-For-Profit Corporation, and various named individuals, as individuals, and on behalf of all other participants, members, annuitants, and beneficiaries of three specific pension funds: (1) the Teachers Retirement System of the State of Illinois; (2) the State Universities Retirement System; and, (3) the Public School Teachers Pension and Retirement Fund of Chicago.

Claimant's suit is based upon undisputed allegations that the State of Illinois, respondent, has failed to make its contributions to the aforesaid pension systems as required by law [*Ch. 108½, Sec. 15-101 et seq., Sec. 16-101 et seq., and Sec. 17-101 et seq., Ill.Rev.Stat., 1971*]; and that such failure on the part of the respondent is a breach of the State's contractual obligations to the members and beneficiaries of the pension systems, said contractual obligations being established by statute and by the *1970 Illinois Constitution, Art. XIII, Sec. 5.*

Claimant seeks an order or decree from this court determining the State's liability as to his claim and rendering an award, or judgment, consistent with its findings.

The petition invokes the court's jurisdiction under Sections 8a and 8b of the Court of Claims Act [*Ch. 37, Sec. 439.8a and b, Ill.Rev.Stat., 1971*]

This case is one of first impression in Illinois. Hence we have deliberated cautiously and at length on the question of

the jurisdiction of this court over the subject matter of this claim. At our request, both parties have favored us with exhaustive briefs on the question of jurisdiction. Oral argument was heard by the court en banc on March 2, 1973, primarily on the question of jurisdiction, a question on which we now express our comments and conclusion.

The legislature created this court and granted it exclusive jurisdiction to hear and determine all claims against the State of Illinois. As set forth in §8 of the Court of Claims Act, the court's exclusive jurisdiction includes:

(a) All claims against the State founded upon any *law* of the State of Illinois . . . and

(b) All claims against the State founded upon any *contract* entered into with the State of Illinois.

Since this case is founded upon both (a) a law of this State and (b) an alleged contract with this State, the Court of Claims has exclusive jurisdiction *if* the case is, in fact, "a *claim* against the State, cognizable by the court" as contemplated by the following §23 of the Court of Claims Act:

"It is the policy of the General Assembly to make no appropriation to pay any *claim against the State, cognizable by the court,* unless an award therefor has been made by the court." [Ch. 37 "Courts", Sec. 439.23, Ill.Rev.Stat., 1971] (Emphasis added.)

Is this a *claim* against the State within the meaning of the above §23? If so, it differs from all other causes of action under our jurisdiction. In all other claims that have come before us, a claimant seeking a money judgment must prove actual damages measurable in financial loss.

For example, a claimant may be awarded damages for personal injuries caused by the State's negligence in maintaining a stop sign at a highway intersection. However, a citizen who merely sees the potential danger in a downed stop sign does not have a "claim" against the State unless he suffers some actual damage caused by that situation and

proves that the State's negligence was the proximate cause of his financial loss.

In the case before us, the complaint does not charge that any teacher or member has ever suffered any financial damage or failed to receive full pension benefits as provided by law.

We first viewed the situation as being somewhat analogous to the federal Social Security System. Last year Congress abandoned all pretense of an "actuarially sound" trust fund for Social Security and provided that benefits would be financed by each year's social security tax from wage earners. Yet, as stated in a recent article by E. L. Dale, Jr., "No one's benefits—present or future—are in jeopardy. Social Security payments will stop only on the day that the U.S. government stops paying its bills."[*]

The court felt that the same conclusion would apply to any pension or retirement system created by the State of Illinois so far as the payment of all benefits is concerned. However, the power of the Congress to change the social security law is apparently without any such constitutional limitation as now seems to be imposed on the Illinois Legislature by our 1970 Constitution in Article XIII, §5:

## "PENSION AND RETIREMENT RIGHTS

"Membership in any pension or retirement system of the State, any unit of local government or school district, or any agency or instrumentality thereof, shall be an enforceable contractual relationship, the benefits of which shall not be diminished or impaired."

The above section was adopted by the *Sixth Illinois Constitutional Convention* on July 21, 1970. After reading the verbatim transcript of that Convention's debate on the

---

[*]"Congress Gets a Grip on Social Security" by Edwin L. Dale, Jr., member of the New York Times Washington Bureau, Chicago Tribune, January 21, 1973. Sec. 2, page 1.

adoption of this section, we must conclude that this constitional mandate was intended to establish the enforceability of the contractual rights of the claimant in this action. This provision is much more explicit and affirmative than the general language of Art. I, Sec. 16, which merely forbids any law "impairing the obligation of contracts."

The same Article XIII of the 1970 Constitution which declares the claimant has *enforceable* contractual rights, also delegates to the legislature the authority to prescribe the manner and form in which claimant may seek to enforce his rights against the state by a court procedure. Article XIII, Sec. 4 (effective January 1, 1972) abolished sovereign immunity in this state "except as the General Assembly shall provide by law." The General Assembly responded by enacting P.A. 77-1776 (also effective January 1, 1972) which re-enacted the Court of Claims Act (*Ch. 127, Sec. 801, Ill.Rev.Stat., 1972 Supp.*):

"Except as provided in. . .[the Court of Claims Act] . . . the State of Illinois shall not be made a defendant or party in any court."

The legislature has thus declared that the only court room door which is open to any claimant having a cause of action against the State of Illinois is the door of the Court of Claims. This conclusion was firmly supported by a recent decision of the Illinois Appellate Court in *Chicago Welfare Rights Org.* vs. *Weaver, 5 Ill. App. 3d (1972) 655.* The Supreme Court of Illinois has previously upheld the exclusive jurisdiction of this court in certain causes of action against the State. Its most recent pronouncement is stated in *Edelen* vs. *Hogsett, 44 Ill.2d (1970) 215.*

It seems clear, therefore, that this court's jurisdiction has been properly invoked by the claimant in this case. The Attorney General confirms this in a brief filed on behalf of the respondent.

It seems equally clear that, since no other court, state or federal, has the requisite jurisdiction over this matter, this court must exercise its jurisdiction in this cause. Otherwise the claimant would be deprived of his constitutional rights under Article I, Sec. 12 of our 1970 Constitution which states that "every person *shall* find a certain remedy in the laws for all injuries and wrongs . . ." (The 1870 Bill of Rights counterpart merely stated that "every person *ought* to find a remedy in the law. . . .") (Emphasis added.) We turn then to such remedy as may be available to the claimant in this suit.

There are no significant issues of law or fact which are in dispute in this matter. At the time oral argument was heard by the court on March 2, 1973, the parties filed stipulations as to the State's unfunded statutory obligations to the Teachers and the Universities Retirement Systems. Still pending, and apparently unresolved by the parties hereto, is the status of the Chicago Teachers Fund. Accordingly, this opinion is confined to the Downstate and University Teachers Funds.

These obligations, founded upon statute, are clearly set forth in *Ch. 108½, Ill.Rev.Stat., 1971:*

Section 15-155 provides: *Employer contributions. The State of Illinois shall make contributions by biennial appropriations* of the amounts which, together with the other contributions of employers out of trust, federal, and other funds under their control, the contributions of the participating employees, income from investments, and other income of this system, will be necessary to meet the costs of maintaining and administering this System:

(1) the total amount of the employer contribution for any fiscal year shall be the sum of the amounts estimated to be required, on the basis of the actuarial tables adopted by the board and the prescribed rate of interest to meet the disability benefits, additional death benefits, the employers' portion of the cost of all annuities and survivors insurance benefits and expenses of administration expected to be paid during the year and to result in the accumulation of assets at the end of the year equal to the sum of the following:

(a) the liability for all annuities expected to be paid to the then annuitants, and the survivors insurance benefits expected to be paid;

(b) the liability for all accumulated additional, normal, and survivors insurance contributions of the then participants;

(c) the single premium reserve required for the employers' portion of the

cost of all annuities which have then accrued because of previous earnings of the then participants;

(d) additional reserves which may reasonably be required because of variations in mortality, interest, and turnover experience.

In determining the employer contributions, the board shall include the amount which is required to amortize the cost of acquisition of land and the construction of an office building thereon over a period not exceeding 30 years, including interest at the rate of 6% per anum, less the estimated amount of rentals which may be received from the lease of surplus space in the building.

The contributions of employers from State appropriations for any fiscal year shall not be less than an amount which is required to fund fully the current service costs in accordance with actuarial reserve requirements as prescribed in paragraph (1) of this Section, plus interest at the prescribed rate on the unfunded accrued liabilities.

If an employee is paid from trust or federal funds, the employer shall pay to the board contributions from these funds which are required to fund fully the current service costs in accordance with the actuarial reserve requirements as prescribed in paragraph (1) of this Section. Funds of the alumni associations, foundations, and athletic associations which are affiliated with the universities included as employers under this Article and other employers which do not receive State appropriations are considered as trust funds for the purpose of this Article.

(2) the total employer contribution shall be apportioned among the various funds of the State and other employers, whether trust, federal, or other funds, in accordance with actuarial procedures approved by the board.

The contributions of the State of Illinois for employers which receive appropriations from the State for personal services shall be payable from appropriations made to the employers. The contributions for Class I junior colleges shall be payable solely from appropriations to the Illinois Junior College Board for employer contributions. Class I junior colleges making employer contributions prior to the effective date of this amendatory Act of 1967 shall be reimbursed by the Illinois Junior College Board upon the filing of a claim for reimbursement in the manner prescribed by the Board. The Auditor of Public Accounts shall draw warrants payable to the treasurer of the system upon proper certification by the system, by the Illinois Junior College Board or by the employer in accordance with the laws making such appropriation.

Section 15-156 provides: *Obligations of state. The payment of (a) the required State contributions,* (b) all benefits granted under this system, and (c) all expenses in connection with the administration and operation thereof *are obligations of the State of Illinois* to the extent specified in this Article.

Section 16-158 provides: *Contributions by state and other employing units. The State shall make contributions* from the common school fund and other state funds to this system of the *amounts required to meet the obligations of the State* for the next fiscal year as provided in Sections 16-159 and 16-160. Such amounts shall be no less than 1.2 multiplied by members' contributions and be certified by the board to the Superintendent of Public Instruction and Auditor of Public Accounts.

If employees are paid from special trust or federal funds which are administered by the employing unit, whether school district or other unit, the

employing unit shall pay to the retirement system from such funds the full accruing retirement costs based upon such service as determined by the Board of Trustees of the Teachers' Retirement System.

Section 16-162 provides: *Obligations of State. Payment of the required State contributions* and of all pensions, annuities, retirement allowances, death benefits, refunds and other benefits granted under or assumed by this retirement system, and all expenses in connection with the administration and operation thereof, *are obligations of the State.* [Emphasis supplied]

The meaning and intent of the above statute seems clear and unequivocal. The legislature has created a *de facto* contract between the State and the members of the pension funds, an "enforceable contractual relationship" according to Article XIII §5 of the Illinois Constitution. The teachers, on their part, have performed their obligations thereunder to make contributions to the system from their salaries in specified amounts as required by §16-152 and §15-157 of the Acts. These contributions are automatically deducted from teachers salaries and are a condition of employment. The said contract remains executory on the part of the State.

Both parties to this action, in their briefs and oral arguments, agreed that this court cannot compel the legislature to make any appropriations. *Fergus* vs. *Russell, 277 Ill. 20 (1917)*. Nor, according to the briefs filed by the parties in this cause, could any other court force such action on the legislature by decision, injunction or mandamus. To do so, they have suggested, would be violative of the doctrine of the separation of powers. We are reminded of a historic decision of the U.S. Supreme Court in 1832 which enraged President Andrew Jackson, *Worchester* vs. *Georgia, 6 Peters 561-63*. The President is reported to have said, "John Marshall has made his decision; —*now let him enforce it!*"

As we have said, this case is one of first impression in Illinois. In the states of Washington, California, Arizona and Pennsylvania, we find cases similar to the matter before us in which the courts have ruled that public pension rights are

contractually enforceable against municipalities. *Bakenhus* vs. *Seattle,* 48 Wn. 2d 695, 296 2d 536 (1956); *State ex rel. Weaver* vs. *Evans,* Supreme Court Cause No. 41851 (1972); *Allen* vs. *Long Beach,* 45 Cal. (2d) 128 (1955); *Lyon* vs. *Flournoy,* 76 Cal. Rep. 869 (1969); *Yeazell* vs. *Copins,* 89 Ariz. 109 (1965); *Hickey* vs. *Pittsburgh Pension Board,* 378 Pa. 300, 106 A. 2d 233, 52 ALR 2d 430 (1950).

Perhaps the leading case from other jurisdictions, and the only case we have noticed in which a writ of mandamus issued against a legislative body, was *Dombrowski* vs. *City of Philadelphia,* 431 Pa. 199, 245 A. 2d 238 (1968).

In *Dombrowski* the Supreme Court of Pennsylvania affirmed the issuance of a writ of mandamus (under a liberal Mandamus Act* and where no Court of Claims existed) compelling the city to make appropriations to its retirement system assuring the actuarial soundness required by its Home Rule Charter. Citing a long line of Pennsylvania authority, the court noted that the entire theory of vested rights in public retirement benefits is a direct outgrowth of the contractual concept of pensions. The court went on to find that the relators' contractual relationship with the city stemmed from a duty imposed by law, being the creation and administration of a retirement system, and that as a party to the contract he had standing to seek the writ (245 A. 2d 238, 245). That the failure of the city to provide contributions adequate to keep the retirement fund on an actuarially sound basis resulted in impairment of a contract obligation was clear:

"In essence, then, Dombrowski was attempting to assure himself and all other members of the Philadelphia municipal retirement system that sufficient funds would be present to meet his and others' retirement payments. Part of his

---

*The Pennsylvania Mandamus Act provided (Section 3, 12 P.S. §1914): The writ of mandamus may issue upon the application of any person beneficially interested."

contract with the city was a promise made by the city, in its Home Rule Charter, that the retirement system would be actuarially sound. The court below found, a finding not here disputed, that the city had not kept its promise. *Dombrowski is thus suffering a present impairment of his contractual rights and thus an immediate injury.*" Id., 246-47 (emphasis supplied)

The court was not impressed with the suggestion that if in due course the relator did not receive his retirement benefits he would sue the city for breach of contract, enter judgment and execute upon city property, the duty to pay the pension being an obligation of the municipality. Nor was his injury by virtue of the failure to provide reserve funding deemed less immediate because there was a prospective future cause of action for breach. Concluding that the suit was properly brought in the individual capacity of the relator as a not yet retired member of the retirement system, the court held:

"It is Dombrowski's contractual relationship with the city that is impaired by the city's failure to comply with its own Home Rule Charter and this immediate impairment supports his standings; that appellee might be able through judgment and execution to obtain the funds due him in 1972 does not prevent him from asserting in 1968 a present impairment of contractual rights." Id., 248.

This Pennsylvania case of *Dombrowski* could not be followed in Illinois for several obvious reasons. There is no procedure for mandamus against the state legislature, and certainly not in this court which has exclusive jurisdiction over the subject matter of this claim. Although, as suggested in *Dombrowski*, there is a present impairment of claimant's contractual rights, claimant has shown no actual damages, measurable in dollars, which could be a reasonable basis for an award by this court. We recognize, of course, the desirability of full funding, accruing interest to accumulated reserves, and the avoidance of crushing future unfunded liabilities.

As previously stated, claimant's suit seeks an award by this court pursuant to §23 of the Court of Claims Act. In so doing, he is employing and exhausting his statutory

remedies, and fortifying his argument on the constitutional issues. Claimant may be mindful of the following statement by the Supreme Court in *Edelen* vs. *Hogsett*, 44 Ill.2d 215 (1969) at page 219:

"Were it not for the existence of the Court of Claims Act, appellant's argument might be of some substance, but the existence of that legislation, modifying the State's immunity from suit, and the failure of the appellant to seek remedy thereunder, in our judgment renders his constitutional argument inappropriate and not cognizable by this court in the posture in which it is here presented."

We are impressed with the diligence of counsel for both sides in their efforts to work out a practical solution to this difficult problem, and exhibiting, as they have, a sympathetic understanding of the impact of a payment for the full amount of the state's liability to the respective funds. As of this date the full amount apparently would be in excess of *two billion six hundred million dollars.* The parties have proposed to amortize said liability over a 50 year period. While the said proposal has been approved as actuarially sound, we cannot enter an award based thereon. We feel that the finding of this court must be in the nature of a declaratory judgment, pursuant to § 57.1 of the Civil Practice Act, a declaration of claimant's rights as we see them, and leaving the amount of any consequential relief to the discretion of the legislature.

It is the opinion of this court that the members, annuitants, and beneficiaries of the Teachers Retirement System of the State of Illinois, and of the State Universities Retirement System are parties to a constitutional and statutory contract with the State of Illinois; that the 1970 Constitution describes their rights thereunder as enforceable, and that the State of Illinois has failed to meet its statutory obligations regarding its indebtedness to these two funds as follows:

Teachers Retirement System of the State of Illinois

| | |
|---|---|
| 1. Due as of June 30, 1971: | $1,748,375,624.00 |
| 2. Due as of June 30, 1972: | 88,179,200.00 |

| | |
|---|---|
| 3. Due as of June 30, 1973: | 105,820,000.00 |
| 4. Due for Fiscal Year 1974: | 205,600,000.00 |
| | $2,147,974,824.00 |

State Universities Retirement System

| | |
|---|---|
| 1. Due as of August 31, 1971: | $ 311,336,000.00 |
| 2. Due as of August 31, 1972: | 90,085,722.00 |
| 3. Due as of August 31, 1973: | 53,065,507.00 |
| 4. Due for Fiscal Year 1974: | 55,882,691.00 |
| | $ 510,369,920.00 |

Finally, we take judicial notice of the fact that there are now bills pending in the General Assembly which appropriate monies to the Teachers Retirement System as suggested in the stipulation filed herein on March 2, 1973. We also take notice of published reports to the effect that the Governor has now proposed a full scale examination of all public pension programs with a view toward eventually working out an equitable approach.