(No. 75-406, Consolidated—

| | | |
|---|---|---|
| Don E. Beane, Jr. | No. 75-CC-406 | $5,773.68 |
| and | | |
| Maninfior Court Reporting Service, | No. 75-CC-529 | 4,662.82 |
| and | | |
| C. Don Weston | No. 75-CC-623 | 1,665.00 |
| and | | |
| Charles J. Kolker | No. 75-CC-652 | 424.50 |
| and | | |
| Barbara Creath | No. 75-CC-653 | 943.79 |
| and | | |
| Richard E. Shinn | No. 75-CC-745 | 91.50 |
| and | | |
| Gary J. Maninfior | No. 75-CC-756 | 175.90 |

Claimants, *vs.* State of Illinois, Respondent.

*Opinion filed February 6, 1976..*

Per Curiam.

The Claimants and the office of the Attorney General have asked the Court to rule on this case on the basis of a joint stipulation of facts, the departmental reports and a memorandum of law which by agreement of the parties, has set forth the applicable law and states the issues as the parties see them. The Claimants in this suit are either licensed attorneys who have rendered services to the Fair Employment Practices Commission as hearing officers or they are court reporters who have rendered services in the taking of the transcript of the hearings conducted by the hearing officers. The Fair Employment Practices Commission was unable to pay these claims because the appropriations made by the legislature were inadequate. The original appropriation was expended with the exception of $24.28 remaining after which a deficiency appropriation was passed and utilized leaving a balance of $11.53. The department recognizes the validity of these claims other than the fact that there was insufficient appropriations.

Although the Constitution of 1870 has now been superceded, and the expenses for which these Claimants seek reimbursement were incurred following the effective date of the Constitution of 1970, the comments in the various opinions relating to Article IV, Sec. 19 of the Constitution of 1870 are still pertinent in view of the essential similarity with *Ill.Rev.Stat., Ch. 127, 166,* which is still in full force and effect. Both forbid spending or binding of the State to debts in excess of money appropriated, unless expressly authorized by law.

The General Assembly shall never grant or authorize extra compensation, fee or allowance to any public officer, agent, servant or contractor, after service has been rendered or a contract made, or authorize the payment of any claim, or part thereof, hereafter created against the State under any agreement or contract made without express authority of law; and all such unauthorized agreements or contracts shall be null and void; *provided,* the General Assembly may make appropriations for expenditures incurred in suppressing insurrection or repelling invasion. (Art. IV, Sec. 19, Constitution of Illinois 1870)

No officer, institution, department, board, or commission shall contract any indebtedness on behalf of the State, nor assume to bind the State in an amount in excess of the money appropriated, unless expressly authorized by law. *Ill.Rev.Stat., Ch. 127, 166.*

The essential similarity of these two provisions is the use of the term "express authority of law" used in the Constitution of 1870 and the term "expressly authorized by law" as used in the statute. These terms raise the issue as to what type of an expenditure is expressly authorized by law.

The leading cases would appear to be *Fergus v. Brady, 277 Ill. 272; Board of School Inspectors of the City of Peoria, a corporation v. State of Illinois, 12 Ill.Ct.Cl. 17;* and *Schutte and Koerting Co., Corporation, etc. v. State of Illinois, 22 Ill.Ct.Cl. 591.*

For the purposes of this discussion it is not necessary to elaborate on the background of the *Fergus* decision, but it would be pertinent to quote from the decision beginning on page 279:

In Sec. 19, claims under an agreement or contract made by express authority of law are excepted, and if there is some particular and specific thing which an officer, board or agency of the State is required to do, the performance of the duty is expressly authorized by law. That authority is express which confers power to do a particular, identical thing set forth and declared exactly, plainly and directly, with well defined limits, and the only exception under which a contract exceeding the amount appropriated for the purpose may be valid is where it is so expressly authorized by law. An express authority is one given in direct terms, definitely and explicitly, and not left to inference or to implication, as distinguished from authority which is general, implied or not directly stated or given. An example of such express authority is found in one of the deficiency appropriations to the Southern Illinois Penitentiary which had been paid, and serves only as an illustration. The authorities in control of the penitentiary are required by law to receive, feed, clothe and guard prisoners convicted of crime and placed in their care, involving the expenditure of money which may vary on account of the cost of clothing, food and labor beyond the control of the authorities, and which could not be accurately estimated in advance for that reason or by determining the exact number of inmates.

The *Board of School Inspectors* case involved a suit by the City of Peoria for reimbursement of expenses incurred in the education of crippled children. The edu-

cation of these children was apparently induced by the passage of a statute by the Illinois Legislature which provided for reimbursement of the expenses incurred by school districts or others in the education of these children. The Legislature in passing the statute provided for $100,000 to defray this expense. The response was so overwhelming that the expenses of the various school districts far exceeded the $100,000. The Director of the Department of Public Welfare who was charged with the responsibility for the administration of this program prorated the claims and authorized the payment to each Claimant on a prorated basis. The claim of the City of Peoria was for the excess over and above their prorated share. The Court of Claims in that case held that the proration was an equitable approach and that the City of Peoria had no claim to any further reimbursement as the expenditure was one not expressly authorized by law in accordance with the definitions set forth in *Fergus v. Brady*. The Court distinguished *Fergus v. Brady* from *Board of School Inspectors* by pointing out that in the illustration set forth in *Fergus v. Brady,* the authorities in charge of Southern Illinois Penitentiary had a duty imposed by law to take care of all prisoners sent to their institutions whereas in *Board of School Inspectors* it was not compulsory that the counties provide the education for these crippled children. The Court points out that as a matter of fact many school districts throughout the State did not choose to participate. The claim of the *Board of School Inspectors of the City of Peoria* was therefore denied.

In *Schutte and Koerting Co., a corporation, etc. v. State of Illinois,* we have a case where the Legislature set up the Illinois Coal Products Commission, a temporary non-departmental legislative commission for purposes of constructing and maintaining an experimental pilot plant to develop techniques for the profitable utili-

zation of the low grade coal found in Illinois. The Commission was originally created in 1943, at which time a total of $35,000 was appropriated. In each of the years 1945, 1947, 1949 and 1951, the Commission was re-created by an identical act of the General Assembly, and in each act a certain specified sum was appropriated for the identical purposes expressed in the 1943 act. *Schutte v. State* was filed as a result of the fact that contracts were entered into between the Coal Products Commission and certain suppliers with said contracts being in excess of the $100,000 appropriated for the 1949 through 1951 biennium.

In *Schutte v. State* the Court states beginning on page 603:

> With respect to this question, it is fundamental that all governmental agencies, departments and commissions are strictly circumscribed in their powers and authorities by the constitution and statutes of the State of Illinois.

> Chapter 127, §166 of the Illinois Revised Statutes, (1955 State Bar Association Edition) provides as follows: §166 Indebtedness exceeding appropriation prohibited. No officers, institution, department, board of commission shall contract any indebtedness on behalf of the State, nor assume to bind the State in an amount in excess of the money appropriated, unless expressly authorized by law. 1919, June 10, Laws 1919 p. 946, §30.

This Court then follows by quoting from *Fergus v. Brady, pp.279 and 280* wherein they once again discuss what is meant by express authority of law and cite the example given with reference to Southern Illinois Penitentiary.

However, in *Schutte v. State* rather than to deny all claims outright, this Court took one step beyond their holding in *Board of School Inspectors of the City of Peoria v. State* and held that where sufficient funds were available at the time the contract was entered into, the Court would honor the contract even though the contract was not paid before the funds available were totally expended.

The Court went on in the *Schutte* case to hold that any contract entered into, after the appropriation had become totally obligated, would be denied.

It is important in applying the principle set out in *Schutte* to distinguish between the balance of the appropriation left unobligated and the balance of the appropriation actually remaining on hand. To allow a claim, simply because the amount actually being held on the date the obligation is incurred equals or exceeds the obligation, would lead to overspending by the agency and deficiency appropriating by the Court.

On the other hand, to carefully grant awards on the basis of the amount unobligated on the date the debt is incurred could result in a more equitable distribution of the funds appropriated and hopefully, responsible spending controls on the part of the agencies.

It is inherent in the administration of State government that expenditures should not exceed appropriations previously made with the possible exception set forth in the case of *Fergus v. Brady* where the expenditure is strictly prescribed and the spending agency is compelled by circumstances and law to obligate the State.

Without strict and well enforced guidelines, the spending of State officials could become rampant.

The drafters of the Constitution of 1970 were fully cognizant of this situation when they drafted Article VIII, Sec. 1. They provided two requisites for spending of public funds: it must be for a "public purpose" and it must be "only as authorized by law":

Section 1. General Provisions (a) Public funds, property or credit shall be used only for public purposes.

(b) The State, units of local government and school districts shall incur obligations for payment or make payments from public funds only as authorized by law or ordinance.

We find here a similarity of the concepts that obligations must be made only with "express authority of law" (Constitution of 1870) or "only as authorized by law" (Constitution of 1970).

The basic concept of the obligation having to be authorized by law remains, but the question arises as to the significance, if any, of the fact that the drafters failed to utilize the word "express" or "expressly" in conjunction with the phrase "only as authorized by law."

Did this indicate an intent that the restrictions on obligating or spending public funds be less stringent? Was this simply an attempt to delegate a wider latitude of discretion to the General Assembly? Or was it neither, but simply an example of the elimination of superfluous verbage?

The determination of this question seems academic in view of the fact that the law on the books today remains as it was in 1967 and 1968, *Ill.Rev.Stat. Ch. 127, §166,* and retains the "restrictive" phrase "expressly authorized by law."

The question then is, were the expenditures in question here, namely the F.E.P.C.'s expenses involved in providing hearings and records thereof to the complainants, expenditures absolutely (expressly) required by law? Was the obligation under the Constitution of 1970 and the Fair Employment Practices Act analogous to the situation where the prison officials had no choice but to feed, clothe and house the prisoners assigned to their care?

We believe that they were. We, therefore, make the following awards:

DON E. BEANE ....................... .$5,773.68
MANINFIOR COURT REPORTING
   SERVICE ............................ .4,662.82

C. DON WESTON .......................1,665.00
CHARLES J. KOLKER ...................424.50
BARBARA CREATH .....................943.79
RICHARD E. SHINN ......................91.50
GARY J. MANINFIOR.....................175.90